Below is an order of the court.

_David W. Hercher_
DAVID W. HERCHER
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>15005 NW CORNELL LLC,<br>VAHAN M. DINIHANIAN, JR.,<br><br>          Debtors. | Bankruptcy Case Nos.:<br><br>19-31883-dwh11 (Lead Case)<br>19-31886-dwh11<br><br>Jointly Administered Under<br>Case No. 19-31883-dwh11<br><br>ORDER APPROVING COMPROMISE<br>AND DISMISSING CASES |

THIS MATTER having come before the Court on the Motion to Approve Compromise and Dismiss Jointly-Administered Bankruptcy Cases [Docket No. 135] (the "***Motion***") The Court having reviewed the Motion and having heard arguments of counsel, and being otherwise fully advised in the premises; now, therefore,

THE COURT FINDS THAT:

1.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, 11 U.S.C. §§ 105 and 1112, and Fed. R. Bankr. P. 1017 and 9019.

ORDER RE: MOTION TO APPROVE COMPROMISE AND
DISMISS JOINTLY ADMINISTERED BANKRUPTCY
CASES

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

2.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4.     Proper, timely, adequate, and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and no other or further notice is required.

5.     The Motion seeks approval of the Settlement Agreement between the Debtors and their respective bankruptcy counsel (the "***Settlement Agreement***").  Approval of the Settlement Agreement is in the best interest of the Debtors' estates.

6.     Debtors have demonstrated cause for dismissal pursuant to § 1112(b) of the Bankruptcy Code, as dismissal will not prejudice creditors of the bankruptcy estates of the Debtors, and dismissal will preserve a substantial surplus for the Debtors' equity interest holders.

THEREFORE, IT IS HEREBY ORDERED as follows

7.     The Motion is GRANTED;

8.     Debtors, Perkins Coie LLP ("Perkins") and Motschenbacher & Blattner LLP ("M&B") are authorized to enter into and perform the terms and provisions set forth in the Settlement Documents attached to the Motion as <u>Exhibit 2</u>.

9.     Applications for compensation by the Debtors' professionals shall be addressed in separate orders.  Debtors shall pay their respective professionals in accordance with such orders and the Settlement Documents.

10.    Debtors shall promptly pay any outstanding U.S. Trustee fees.

11.    All remaining surplus funds shall re-vest in the Debtors, and shall no longer be property of either bankruptcy estates.

12.    The Debtors' estates have been fully administered.  The Clerk of the Court is

ORDER RE: MOTION TO APPROVE COMPROMISE AND DISMISS JOINTLY ADMINISTERED BANKRUPTCY CASES

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

directed to enter an order and final decree dismissing and closing the case of *In re 15005 NW Cornell LLC*, case number 19-31883-dwh11.  The Clerk of the Court is also directed to enter an order and final decree dismissing and closing the case of *In re Vahan M. Dinihanian Jr.*, case number 19-31886-dwh11.

13.     The provisions of this Order regarding approval of the compromise, and any actions taken pursuant thereto, shall survive entry dismissal of the Debtors' cases, and the Court shall retain jurisdiction to the extent necessary to enforce the terms of this Order.

###

**PRESENTED BY:**

MOTSCHENBACHER & BLATTNER LLP

/s/ Nicholas J. Henderson
Nicholas J. Henderson, OSB #074027
Telephone: 503-417-0508
E-mail: nhenderson@portlaw.com
Of Attorneys for Debtor

**PARTIES TO SERVE:**

**Mail**:
All parties listed on Court's mailing matrix.

**CM/ECF**:
Parties designated to receive service via CM/ECF

ORDER RE: MOTION TO APPROVE COMPROMISE AND DISMISS JOINTLY ADMINISTERED BANKRUPTCY CASES

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

**After Recording, return to:**
**Motschenbacher & Blattner LLP**
c/o Nicholas J. Henderson
117 SW Taylor Street, Suite 300
Portland, OR 97204
**Perkins Coie LLP**
c/o Douglas Pahl
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209

**Grantor's Name and Address:**
**Vahan IV NW Tenth LLC**
237 NW Skyline Blvd.
Portland, OR 97210

**Beneficiaries' Name and Address:**
**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, OR 97204
**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209

## TRUST DEED

This Trust Deed ("***Trust Deed***") is made effective as of January 19, 2023 (the "***Effective Date***"), by and between Vahan IV NW Tenth LLC, an Oregon limited liability company, as Grantor (the "***Grantor***"), First American Title Company of Oregon, as Trustee (the "***Trustee***"), Motschenbacher & Blattner LLP, an Oregon limited liability partnership, as a Beneficiary, and Perkins Coie LLP, a Washington State limited liability partnership, as a Beneficiary. For purposes of this Trust Deed, although each of Motschenbacher & Blatter LLP and Perkins Coie LLP are individually a Beneficiary under this Trust Deed, they shall be referred to collectively as the "***Beneficiaries***."

### I.       GRANTING CLAUSE

A.      Grantor, in consideration of the indebtedness recited in this Trust Deed and the trust created by this Trust Deed, irrevocably grants, conveys, and assigns to Trustee, in trust, with power of sale, their one hundred percent (100%) interest in the following described property commonly known as 2150 NE 82nd Ave., Portland, OR 97220, and more particularly described as:

See **Exhibit A**,

together with all buildings, improvements, and tenements now or in the future erected on the

{00565469:2}

property, and all previously or in the future vacated alleys and streets abutting the property, and all easements, rights, appurtenances, leases, including without limitation the leases, permits, or agreements now or hereafter existing, however evidenced, covering all or any portion of the property, together with all rents or monies due or to become due thereunder, and together with all now existing or in the future arising or acquired. All the property described above is referred to in this Trust Deed as the "***Property***."

   B. This Trust Deed is given as security for a six hundred thousand dollar ($600,000.00) Promissory Note dated January 19, 2023 (the "***Note***"). Vahan M. Dinihanian, Jr. and 15005 NW Cornell LLC, an Oregon limited liability company are each a "*Maker*" under the Note, but are "***Borrower***" for the purposes of this Trust Deed. Grantor acknowledges that it is interested in the execution of the Note to settle claims made against each Maker, and further acknowledges that it is receiving consideration in exchange for this Trust Deed.

## II. TERMS AND CONDITIONS

   Grantor covenants and agrees as follows:

**SECTION 1.**  **COVENANT OF TITLE**. Grantor covenants that Grantor is lawfully seized of the estate conveyed by this Trust Deed and has the right to grant, convey, and assign the Property. Grantor will warrant and defend generally the title to the Property against all claims and demands, subject to any easements and restrictions acceptable to Beneficiaries and listed in a schedule of exceptions to coverage in any title insurance policy insuring Beneficiaries' interest in the Property.

**SECTION 2.**  **PROMISE TO PAY.** Borrower shall pay promptly when due the principal of and interest of the Indebtedness and any other charges provided in the Note, this Trust Deed, and any other documents executed in connection with the Indebtedness (collectively the "***Settlement Documents***"). "***Indebtedness***" means the underlying amount owed under the Note.

**SECTION 3.**  **RESERVED.**

**SECTION 4.**  **APPLICATION OF PAYMENTS.** Unless applicable law provides otherwise, or unless specified to the contrary in the other Settlement Documents, each complete installment payment received by Beneficiaries shall be applied first to payment of reserves, if any, due under <u>Sections 5 and 6</u> of this Trust Deed, next to interest due and payable on the Indebtedness, then to principle due and payable on the Indebtedness, and then to any other charges due and payable pursuant to the terms of the Note, this Trust Deed, and any other Settlement Documents. Upon a breach of any covenant or agreement of Borrower or Grantor in the Note, this Trust Deed, or other Settlement Documents, Beneficiaries may apply, in any amount and in any order as Beneficiaries shall determine in Beneficiaries' discretion, any

payments received by Beneficiaries under the Note, this Trust Deed, or under the other Settlement Documents. Beneficiaries, at Beneficiaries' option, may reject any partial payment. Any partial payment which Beneficiaries accepts may be held in a non-interest-bearing account until Beneficiaries receive funds sufficient to equal a complete installment payment, or, may be applied to the Indebtedness in any amount and in any order as Beneficiaries may determine.

## SECTION 5.  TAXES AND LIENS; RESERVES.

5.1 **Payment.** Grantor shall pay when due all taxes and assessments levied against or on account of the Property and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Beneficiaries under this Trust Deed, except for the lien of taxes and assessments not due. Grantor shall keep said first position Trust Deed current at all times and shall not permit a default to occur under said Trust Deed. Without Beneficiaries' prior written consent, Grantor shall not allow any lien inferior to this Trust Deed to be perfected against the Property.

5.2 **Evidence of Payment.** On Beneficiaries' demand, Grantor promptly shall furnish evidence acceptable to Beneficiaries of payment of taxes and assessments and shall authorize the appropriate county official to deliver to Beneficiaries at any time a written statement of the taxes and assessments against the Property.

5.3 **Reserves**. Upon any Event of Default or any event which with the passage of time or notice would become an event of default under this Trust Deed or any other Settlement Documents, Beneficiaries may require Grantor to maintain with Beneficiaries reserves for payment of taxes and assessments. The reserves shall be created by monthly payments of a sum estimated by Beneficiaries to be sufficient to produce, at least thirty (30) days before the taxes and assessments are due, amounts at least equal to the taxes and assessments to be paid. If Beneficiaries determine that the reserve funds are insufficient at any time, Grantor shall promptly pay any deficiency to Beneficiaries on their demand. The reserve funds shall be held by Beneficiaries in a deposit account, and the funds may be commingled with other funds held by Beneficiaries. Unless Beneficiaries and Grantor agree in writing otherwise or applicable law requires that Beneficiaries pay Grantor interest on the funds, Beneficiaries shall not be required to pay Grantor any interest on the funds. Beneficiaries shall apply the reserve funds to pay the taxes and assessments so long as Grantor is not in breach of any covenant or agreement of Grantor in this Trust Deed, but only to the extent that funds are available to do so. Beneficiaries do not hold the funds in trust for Grantor and are not the agent of Grantor for payment of taxes and assessments required to be paid by Grantor. Upon any Event of Default under this Trust Deed or any other Settlement Documents, Beneficiaries may apply, in any amount and in any order as Beneficiaries shall determine, any reserve funds held by Beneficiaries: (a) to pay taxes and assessments which are due; or (b) as a credit against the Indebtedness.

{00565469:2}

**EXHIBIT 2**
**Page 3 of 37**

**SECTION 6.** **HAZARD INSURANCE; RESERVES**

6.1 **Policies**. Grantor shall keep its interest in any improvements now existing or in the future erected on the Property insured by carriers who are at all times satisfactory to Beneficiaries against loss by fire, all hazards included within the term "*extended coverage*," flood, casualties, liabilities, and contingencies as Beneficiaries shall require from time to time or at any time during the term of this Trust Deed and in such amounts, on a one hundred percent (100%) replacement cost basis without coinsurance clause, and for such periods as Beneficiaries shall require. All insurance policies and renewals thereof shall be in a form and substance acceptable to Beneficiaries and shall include a loss payable endorsement in favor of an in form and substance acceptable to Beneficiaries and a provision that coverage will not be canceled, altered, or diminished without a minimum of ten (10) days' prior written notice to Beneficiaries. Beneficiaries shall have the right to hold the policies, and Grantor promptly shall furnish to Beneficiaries all renewal notices.

6.1.1 Without waiving any default under, or limiting the generality of any other provisions of this Trust Deed or other Settlement Documents, Beneficiaries may, but shall not be required to, obtain such insurance coverage as it deems necessary or desirable, covering the Property, without prior notice to Grantor upon any failure by Grantor to maintain at all times insurance coverage acceptable to Beneficiaries as required by the terms of the Settlement Documents. All sums paid or agreed to be paid by Beneficiaries for any such insurance coverage shall be for the account of Grantor and shall be without prejudice to Grantor's rights, if any, to receive such funds from the party to whom paid. Grantor shall reimburse Beneficiaries, upon demand, for any sums paid by Beneficiaries, together with interest at the default rate provided in the Note or other Settlement Documents, then at the interest rates borne by the Indebtedness from the date of payment by Beneficiaries until date of reimbursement. Such advances shall be secured by the Property.

6.2 **Payment; Reserves.** All premiums on insurance policies shall be paid by Grantor making payment, when due, directly to the carrier, or in such other manner as Beneficiaries may designate in writing. Prior to the expiration date of any policy, Grantor shall deliver to Beneficiaries a renewal policy in form and substance satisfactory to Beneficiaries and receipts for paid premiums. At Beneficiaries' option, Beneficiaries may require Grantor to maintain with Beneficiaries reserves for payment of insurance premiums. The reserves shall be created and held in the same manner as provided in Subsection 5.3 for reserves for payment of taxes and assessments.

6.3 **Loss.** In the event of loss, Grantor shall give immediate written notice to the insurance carrier and to the Beneficiaries. Beneficiaries may give written notice to the insurance carrier if the Grantor fails to do so within twenty (20) days of the casualty. Grantor hereby authorizes and empowers Beneficiaries as attorney-in-fact for Grantor to make proof of loss, to adjust and compromise any claim under insurance policies, to appear in and prosecute any action arising from such insurance policies, to collect and receive insurance proceeds, and to

{00565469:2}

**EXHIBIT 2**
Case 19-31886-dwh11    Doc 149    Filed 04/14/23    **Page 4 of 37**

deduct therefrom Beneficiaries' expenses incurred in the collection of such proceeds; provided, however, that nothing contained in this <u>Section 6</u> shall require Beneficiaries to incur any expense or take any action hereunder.

      6.4    **Application of Proceeds**.  Grantor authorizes Beneficiaries, at Beneficiaries' option: (a) to apply the balance of such proceeds to the payment of the Indebtedness, whether or not then due; or (b) after deducting Beneficiaries' costs and expenses described above, to hold the balance of such proceeds to be disbursed to Grantor for the cost of reconstruction or repair of the Property.  If the insurance proceeds are held by Beneficiaries to disburse to Grantor for the cost of restoration and repair of the Property, the Property shall be restored to the equivalent of its original condition or such other condition as Beneficiaries may approve in writing. Beneficiaries may require that Grantor deposit with Beneficiaries any amount in excess of the insurance proceeds necessary to complete restoration, which amounts shall be disbursed prior to disbursement of any insurance proceeds.  Unless Beneficiaries and Grantor agree in writing otherwise or applicable law requires that Beneficiaries pay Grantor interest on the proceeds or any other sum which Beneficiaries may require Grantor to deposit with Beneficiaries pursuant to this <u>Section 6</u>.  If the insurance proceeds are applied to the payment of the sums secured by this Trust Deed, any such application of proceeds to principle shall be applied to the most remote unpaid installment of principle and shall not extend or postpone the due dates of any payments required under <u>Section 2</u> or change the amounts of any such payments.   If the Property is sold to Beneficiaries pursuant to <u>Section 17</u> of this Trust Deed or if Beneficiaries otherwise acquire title to the Property, then in addition to the lien and security interests otherwise granted to Beneficiaries under this Trust Deed, Beneficiaries shall have all of the right, title, and interest in and to any insurance policies and unearned premiums thereon and in and to the proceeds resulting from any damage to the Property prior to such sale or acquisition.

**SECTION 7.**        **PRESERVATION AND MAINTENANCE OF PROPERTY: ENVIRONMENTAL LAWS: INDEMNIFICATION.**

      7.1    **Preservation and Maintenance**.   Grantor:

      (a)    Shall not commit waste on the Property;

      (b)    Shall not abandon the Property;

      (c)    Unless Beneficiaries direct Grantor in writing to the contrary, shall restore or repair promptly and in a good and workmanlike manner all or any part of the Property to the equivalent of its original condition, or such other condition as Beneficiaries may approve in writing, in the event of any damage, injury, or loss to the Property, whether or not insurance proceeds are available to cover in whole or in part the costs of such restoration or repair;

      (d)    Shall keep the Property in good condition and repair;

{00565469:2}

(e)     Shall operate and maintain the Property in compliance with all applicable laws and regulations; and

(f)     Shall give notice in writing to Beneficiaries of an, unless otherwise directed in writing by Beneficiaries, appear in, and defend any action or proceeding purporting to affect the Property, including without limitation matters pertaining to land use, zoning and Environmental Laws, Hazardous Substances and Disabilities Laws, as defined below, the security of this Trust Deed or the rights or powers of the Beneficiaries.  "*Disabilities Laws*" shall mean all applicable federal, state, and local laws and regulations related to the usability of and accessibility to the property by people with disabilities.  The term Disabilities Laws includes, but is not limited to, the Fair Housing Amendments Act of 1988 and the Americans with Disabilities Act of 1990, all amendments thereto, and all regulations adopted thereunder.  Neither Grantor nor any tenant nor other person, without the written approval of Beneficiaries, shall remove, demolish, or alter any improvement now existing or in the future erected on the Property.

7.2     **Environmental Laws.**  In this Trust Deed, "*Environmental Laws*" mean any and all state, federal, and local statutes, regulations, and ordinances relating to the protection of human health or the environment.  "*Hazardous Substances*" is used in its very broadest sense and refers to materials that, because of their quantity, concentration of physical, chemical, or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported, or otherwise handled.  Hazardous Substances shall include without limitation petroleum products or crude oil or any fraction thereof and any and all hazardous or toxic substances, materials, or waste as defined by or listed under the Resource Conservation and Recovery Act, the Toxic Substances Control Act, the Comprehensive Environmental Response, Compensation and Liability Act, or any other of the Environmental Laws.  Grantor shall cause the Property and all operations on the Property to comply with all Environmental Laws and orders of any governmental authorities having jurisdiction under any Environmental Laws.  Grantor shall exercise extreme care in handling Hazardous Substances and shall undertake any and all preventive, investigatory, or remedial action, including without limitation, emergency response, removal, containment, and other remedial action: (a) required by any applicable Environmental Laws or orders by any governmental authority having jurisdiction under Environmental Laws; or (b) necessary to prevent or minimize property damage, including without limitation damage to Grantor's own property, personal injury or damage to the environment, or the threat of any such damage or injury, by releases of or exposure to Hazardous Substances in connection with the Property or operations on the Property.  In the event Grantor fails to perform any of its obligations under this Section 7, Beneficiaries may perform, but shall not be required to perform, such obligations at Grantor's expense pursuant to Section 9 of this Trust Deed.  In performing any such obligation of Grantor, Beneficiaries shall at all times be deemed the agent of Grantor and shall not by reason of such performance be deemed to be assuming any responsibility of Grantor under any Environmental Laws or to any third party.

7.3 **Further Assurances.** At any time Beneficiaries request, Grantor shall provide to Beneficiaries further assurance of Grantor's compliance with this <u>Section 7</u>. The assurances shall be in form and substance satisfactory to Beneficiaries, and may include without limitation Grantor providing to Beneficiaries an environmental audit from a source acceptable to Beneficiaries at Grantor's expense.

7.4 **Indemnification.** Grantor agrees to indemnify and hold harmless Beneficiaries and their officers, directors, employees, and agents, and Beneficiaries' successors and assigns and their officers, directors, employees, and agents against any and all claims, demands, losses, liabilities, costs, and expenses, including without limitation attorneys' fees at trial and on any appeal or petition for review, incurred by such person: (a) arising out of or relating to any investigatory or remedial action involving the Property and the operations conducted on the Property and required by Environmental Laws or Disabilities Laws or by orders of any governmental authority having jurisdiction under any Environmental Laws or Disabilities Laws; or (b) on account of injury to any person whatsoever or damage to any property arising out of, in connection with, or in any way relating to: (i) the violation of any applicable laws or regulation, including without limitation Environmental Laws or Disabilities Laws; (ii) the use, treatment, storage, generation, manufacture, transport, release, spill, disposal, or other handling of Hazardous Substances on the Property or in connection with operations; or (iii) the contamination of any of the Property by Hazardous Substances by any means whatsoever; and (c) without in any way limiting the foregoing, for any other reason, or on account of, or in connection with the Property of this Trust Deed.

7.5 **Survival.** The covenants contained in this <u>Section 7</u> shall survive the repayment of Indebtedness and the delivery of the deed in lieu of foreclosure to Beneficiaries or any successor of Beneficiaries and shall survive any foreclosure, whether judicial or nonjudicial, of the Property by Beneficiaries or any successor of Beneficiaries, and shall be for the benefit of Beneficiaries, and any successor to Beneficiaries, as holder of any security interest in the Property of the Indebtedness, or as owner of the Property or any other property of Grantor following foreclosure of the delivery of a deed in lieu of foreclosure.

**SECTION 8.      USE OF PROPERTY.** Unless required by applicable law or unless Beneficiaries have otherwise agreed in writing, Grantor shall not initiate or acquiesce in a change in the zoning classification or comprehensive plan governing the Property without Beneficiaries' prior written consent. Grantor warrants the Property is not now used for agricultural, timber, or grazing purposes, or for residential purposes.

**SECTION 9.      PROTECTION OF BENEFICIARIES' SECURITY.** If Grantor fails to perform the covenants and agreements contained in this Trust Deed, or if any action or proceeding is commenced which affects the Property or title to the Property or the interest of Beneficiaries in the Property, including without limitation eminent domain, insolvency, code enforcement, violation of any law concerning environmental protection and pollution control

referred to in Section 7 above, or arrangements or proceedings involving a bankrupt or decedent, then Beneficiaries at Beneficiaries' option may make such appearances, disburse such sums, and take such action as Beneficiaries deem necessary or advisable to protect Beneficiaries' interest, including without limitation: (a) employment of attorneys or other advisors; (b) entry upon the Property to investigate and make repairs; (c) procurement of satisfactory insurance; and (d) payment of any tax or liens. Any amounts disbursed by Beneficiaries pursuant to this Section 9, with interest thereon, shall become additional Indebtedness of Grantor secured by this Trust Deed. Unless Grantor and Beneficiaries agree in writing to other terms of payment, such amounts shall be immediately due and payable and shall bear interest from the date of disbursement until paid at the default rate stated in the Note or the Settlement Documents, or if no default rate is stated in the Note or Settlement Documents, then at the interest rates stated in the Note. Grantor hereby covenants and agrees that Beneficiaries shall be subrogated to the lien of any mortgage or other lien discharged, in whole or in part, by the Indebtedness secured by this Trust Deed. Nothing contained in this Section 9 shall require Beneficiaries to incur any expense or take any action.

**SECTION 10.      RESERVED.**

**SECTION 11.      CONDEMNATION.**

11.1    Grantor shall promptly notify Beneficiaries of any action or proceeding relating to any condemnation or other taking, whether direct or indirect, of the Property, or part of the Property, and Grantor shall appear in the prosecute any such action or proceeding unless otherwise directed by Beneficiaries in writing. Grantor authorizes Beneficiaries, at Beneficiaries' option, as attorney-in-fact for Grantor, to commence, appear in, and prosecute, in Beneficiaries' or Grantor's name, any action or proceeding relating to any condemnation or other taking of the Property, whether direct or indirect, and to settle or compromise any claim in connection with any such condemnation or other taking. The proceeds of any award, payment, or claim for damages, direct or consequential, in connection with any condemnation or other taking, whether direct or indirect, of the Property, or part of the Property, or for conveyances in lieu of condemnation, are hereby assigned to and shall be paid to Beneficiaries.

11.2    Grantor authorizes Beneficiaries to apply such awards, payments, proceeds, or damages, after the deduction of Beneficiaries' expenses incurred in the collection of such amounts, at Beneficiaries' option, to restoration or repair of the Property or to payment of the Indebtedness, whether or not then due, with the balance, if any, to Grantor. Unless Grantor and Beneficiaries otherwise agree in writing, any application of proceeds to principal shall be applied to the most remote unpaid installment of principal and shall not extend or postpone the due date of any payments required under this Trust Deed or change the amount of any such payments. Grantor shall execute such further evidence or assignment of any awards, proceeds, damages, or claims arising in connection with such condemnation or taking as Beneficiaries may require.

{00565469:2}

**EXHIBIT 2**
**Page 8 of 37**

Case 19-31886-dwh11    Doc 149    Filed 04/14/23

**SECTION 12.      GRANTOR AND LIEN NOT RELEASED.**

12.1    From time to time, at Beneficiaries' option, upon notice to Grantor but without any need to give notice to or obtain the consent of Grantor's successors or assigns or of any junior lienholder or guarantor and without any liability on Beneficiaries' part and notwithstanding Grantor's breach of any covenant or agreement in this Trust Deed or the other Settlement Documents, Beneficiaries may do any or all the following:

(a)    Extend the time for payment of the Indebtedness or any part of it;

(b)    Reduce the payments on the Indebtedness;

(c)    Release anyone liable on any part of the Indebtedness;

(d)    Accept renewal note or notes for the Indebtedness;

(e)    Release from the lien of this Trust Deed any part of the Property;

(f)    Release other or additional security;

(g)    Reconvey any part of the Property;

(h)    Consent to any map or plat of the Property;

(i)    Consent to any easement; and

(j)    Execute any subordination agreement.

12.2    Any action taken by Beneficiaries pursuant to the terms of this Section 12 or any modification of the rate of interest upward or downward, or modification of the period of amortization of the Note or change in the amount of the monthly installments payable under the Note or other Settlement Documents, or any combination thereof, which may extend or reduce the term of the Note or this Trust Deed or both, shall not affect the obligation of Grantor or Grantor's successors or assigns to pay the sums secured by this Trust Deed and to observe the covenants of Grantor contained in this Trust Deed, shall not affect the guaranty of any person, corporation, partnership, or other entity for payment of the Indebtedness secured by this Trust Deed, and shall not affect the lien or priority of lien of this Trust Deed on the Property.   Unless otherwise provided by law, the priority of this Trust Deed shall not be affected by any change in terms whether or not it adversely affects subordinate or prior interest holders.

**SECTION 13.      FORBEARANCE BY BENEFICIARIES OR RECEIPT OF AWARDS NOT A WAIVER.** Any forbearance by Beneficiaries in exercising any right or remedy under this Trust Deed, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any other right or remedy.   The acceptance by Beneficiaries of payment of any sum secured by this Trust Deed after the due date of such payment shall not be a waiver of Beneficiaries' right to either require prompt payment when due of all other sums so secured or to declare a default for failure to make prompt payment, nor shall Beneficiaries' receipt of any awards, proceeds, or damages under this Trust Deed operate to cure or waive any default in payment of sums secured by this Trust Deed.

**SECTION 14.      PROHIBITION OF TRANSFER OF PROPERTY OR BENEFICIAL INTERESTS IN GRANTOR; ASSUMPTION.**

{00565469:2}

14.1    Without prior written consent of Beneficiaries, Grantor shall not transfer or agree to transfer all or any part of the Property or any interest in the Property.   For the purpose of this Section 14, the occurrence of any of the following, without limitation, shall be deemed to be a transfer of the Property: any sale, contract to sell, conveyance, assignment of other transfer of, or grant of a mortgage, deed of trust, other lien, or other security interest in, all or any part of the legal equitable title to the Property.

14.2    If any of the events described in Subsection 14.1 occurs, Beneficiaries, at Beneficiaries' option, may declare all of the sums secured by this Trust Deed to be immediately due and payable, and may invoke any of the remedies permitted by this Trust Deed.   If Grantor or a prospective transferee applies to Beneficiaries for consent to transfer, Beneficiaries may require such information as may be reasonably necessary for Beneficiaries to assess the prospective transferee's reputation and financial ability to perform Grantor's obligations under this Trust Deed.   As a condition of its consent to any transfer, Beneficiaries in their discretion may impose an assumption fee, and may increase the interest rate on the Note or under the other Settlement Documents.   However, notwithstanding any of the foregoing, Beneficiaries may withhold their consent to any transfer for any reason whether or not withholding consent is reasonable under the circumstances.   Any consent, if granted, shall not release Grantor or any successor in interest from personal liability for payment and performance of Indebtedness, or for performance of this Trust Deed, the Note, or other Settlement Documents.

## SECTION 15.        RESERVED.

## SECTION 16.        DEFAULT.

16.1    **Events of Default**.   The following shall constitute "***Events of Default***":

(a)      Failure of Borrower to pay any portion of the Indebtedness when it is due.

(b)      Failure of Grantor within the time required by this Trust Deed to make any payment for taxes, insurance, or any other payment necessary to prevent filing of or discharge of any lien.

(c)      Transfer or agreement to transfer any part or interest in the Property in any manner whatsoever, including, but not limited to, allowing any lien inferior to this Trust Deed on the Property, or transfer of any other interest of Grantor as described in Section 14.

(d)      Any of the following: (i) Insolvency or business failure of Borrower or Grantor; (ii) the commencement by Borrower or Grantor of a voluntary case under the federal bankruptcy laws or under any other federal or state law relating to insolvency or debtor's relief; (iii) the filing of an involuntary petition against Borrower or Grantor under the federal bankruptcy laws or under any other applicable federal or state law relating to insolvency or

debtor's relief which Borrower or Grantor has not caused to be dismissed within thirty (30) days after such filing; (iv) the appointment or the consent by Borrower or Grantor to the appointment of a receiver, trustee, or custodian of Borrower or Grantor or any of Borrower's or Grantor's property which Borrower or Grantor have not caused to be withdrawn within thirty (30) days after such appointment; (v) an assignment for the benefit of creditors by Borrower or Grantor; (vi) the making or suffering by Borrower or Grantor of a fraudulent transfer under applicable federal or state law; (vii) concealment by Borrower or Grantor of any of their property in fraud of creditors; or (viii) the imposition of a lien through legal proceedings or distraint upon any of the property of Borrower or Grantor or Borrower's or Grantor's failure generally to pay its debts as such debts become due.

(e) Failure of Grantor to make any payment or perform any obligation under any superior liens or encumbrances, within the time required under those liens or encumbrances, and without regard to any grace periods as may be afforded by the terms of such liens or encumbrances, or commencement of any suit or other action to foreclose any superior or inferior liens or encumbrances.

(f) Breach or default under any Settlement Document, which is not cured within any applicable cure period.

(g) Failure of Grantor to timely perform any other obligations under this Trust Deed.

16.2 The Events of Default in this Section shall apply and refer to Borrower, any guarantor of the Indebtedness, and to each of the individuals or entities which are collectively referred to as Borrower.

## SECTION 17. RIGHTS AND REMEDIES ON DEFAULT.

17.1 **Remedies.** Upon the occurrence of any Event of Default and at any time thereafter, Trustee or Beneficiaries may exercise one (1) or more of the following rights and remedies:

(a) Beneficiaries may declare all sums secured by this Trust Deed immediately due and payable, including, without limitation, any prepayment premium which Grantor would be required to pay under the terms of the Note.

(b) The Trustee shall have the right to foreclose by notice and sale, or Beneficiaries shall have the right to foreclose by judicial foreclosure, in either case in accordance with applicable law.

(c) If this Trust Deed is foreclosed by judicial procedure, and if permitted by applicable law, Beneficiaries shall be entitled to a judgment which will provide that if the

foreclosure sale proceeds are insufficient to satisfy the judgment, execution may issue for the amount of the unpaid balance of the judgement.

(d)     Beneficiaries shall have the right to have a receiver appointed to take possession of any or all of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, to collect all the rents and revenues from the Property and apply the proceeds, over and above cost of the receivership, against the sums due under this Trust Deed.  The receiver may serve without bond if permitted by applicable law. Beneficiaries' right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the sums due under this Trust Deed by a substantial amount. Employment by Beneficiaries shall not disqualify a person from serving as a receiver.

(e)     In the event Grantor remains in possession of the Property after the Property is sold as provided above or Beneficiaries otherwise become entitled to possession of the Property upon the occurrence of an Event of Default, Grantor shall become a tenant at will of Beneficiaries or the purchaser of the Property and shall pay a reasonable rental for use of the Property while in Grantor's possession.

(f)     Trustee and Beneficiaries shall have any other right or remedy provided in this Trust Deed, the Note, or any other Settlement Document, or available at law, in equity or otherwise, and specifically, but not limited to, all rights and remedies granted by ORS 86.705, et seq.

17.2    **Rights of Receiver of Beneficiaries-in-Possession.**  Upon taking possession of all or any part of the Property, the receiver or Beneficiaries may:

(a)     Use, operate, manage, control, and conduct business on the Property and make expenditures for all maintenance and improvements as in its judgment are proper;

(b)     Collect the income from the Property, including any past due, and apply such sums to the expenses of use, operation and management, including, but not limited to, receiver's fees, premiums on receiver's bonds, and reasonable attorneys' fees and to the sums secured by this Trust Deed in any order as Beneficiaries shall determine;

(c)     At Beneficiaries' option, complete any construction in progress on the Property, and in that connection pay bills, borrow funds, employ contractors, and make any changes in plans or specifications as Beneficiaries deem appropriate; or

(d) Beneficiaries or the receiver shall be liable to account only for those rents actually received. If the revenues produced by the Property are insufficient to pay expenses, the receiver may borrow from Beneficiaries, if Beneficiaries agree to lend, or otherwise, or Beneficiaries may borrow or advance, such sums as the receiver or Beneficiaries may deem necessary for purposes stated in this Subsection. The amounts borrowed or advanced shall bear interest from the date of expenditure until repaid at the same interest rate as provided in Section 9 of this Trust Deed. Such sums shall become a part of the Indebtedness secured by this Trust Deed and shall be payable by Grantor on demand.

17.3 **Waiver of Marshaling; Sale of the Property.** Notwithstanding the existence of any other mortgage, deed of trust, other lien, or other security interests in the Property held by Beneficiaries or by any other party, Beneficiaries shall have the right to determine the order in which any or all portions of the Indebtedness secured by this Trust Deed are satisfied from the proceeds realized upon the exercise of the remedies provided in this Trust Deed. In exercising its rights and remedies, Beneficiaries may cause all or any part of the Property to be sold as a whole or in parcels, and certain portions of the Property may be sold without selling other portions. Beneficiaries may bid at any public sale on all or any portion of the Property. Grantor, any party who consents to this Trust Deed and any party who now or in the future acquires a security interest in the Property and who has actual or constructive notice of this Trust Deed hereby waives any and all right to require the marshaling of assets in connection with the exercise of any of the remedies permitted by applicable law or provided in this Trust Deed.

17.4 **Waiver; Election of Remedies; Remedies Cumulative.** A waiver by either party of a breach of a provision of this Trust Deed or the occurrence of an Event of Default shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with the provision or any other provision. Election by Beneficiaries to pursue any remedy shall not exclude pursuit of any other remedy, and all remedies of Beneficiaries under this Trust Deed are distinct and cumulative and not exclusive to all other rights or remedies under this Trust Deed or Settlement Documents or afforded by law or equity, and may be exercised concurrently, independently, or successively in any order whatsoever. An election to make expenditures or take action to perform an obligation of Grantor shall not affect Beneficiaries' right to declare a default and exercise its remedies under this Trust Deed.

**SECTION 18. SUCCESSORS AND ASSIGNS BOUND; JOINT AND SEVERAL LIABILITY; AGENTS; CAPTIONS.** The covenants and agreement contained in this Trust Deed shall bind, and the rights under this Trust Deed shall inure to, the respective successors and assigns of Beneficiaries and Grantor. However, nothing in this Trust Deed or other Settlement Documents shall be deemed to permit Grantor to enter into any assignments or transfers except as specifically permitted pursuant to the preceding provisions of this Trust Deed. This Trust Deed and the Indebtedness secured hereby may be assigned in whole or in part or participated in whole or in part to any person by Beneficiaries and without notice to or affecting Grantor's liability hereunder, and Beneficiaries, in connection with such assignment, participation, or similar arrangement, may make all credit and financial data furnished and to be furnished by

Grantor available to such existing or prospective assignee, participant or person. If Beneficiaries assign to any assignees, participants, or other persons all of Beneficiaries' interest in this Trust Deed and the Indebtedness secured hereby, then Beneficiaries shall be and is released from any obligations under this Trust Deed and other Settlement Documents. All covenants and agreements of Grantor shall be joint and several. In exercising any rights under this Trust Deed or taking any actions provided for in this Trust Deed, Beneficiaries may act through their employees, agents, or independent contractors as authorized by Beneficiaries. The captions and headings of the sections and subsections of this Trust Deed are for convenience only and are not to be used to interpret or define the provisions of this Trust Deed.

**SECTION 19.     NOTICE.** All notices, requests, demands. and other communications given or required to be given hereunder shall be in writing and personally delivered or sent by United States registered or certified mail, return receipt requested, postage prepaid or sent by nationally recognized courier service such as Federal Express, duly addressed to the Parties as follows:

| | |
|---|---|
| To the Grantor: | Vahan IV NW Tenth LLC |
| | 237 NW Skyline Blvd. |
| | Portland, OR 97210 |
| | Attn.: Vahan M. Dinihanian, Jr. |
| | |
| To Motschenbacher & Blattner LLP: | Motschenbacher & Blattner LLP |
| | 117 SW Taylor Street, Suite 300 |
| | Portland, OR 97204 |
| | Attn.: Nicholas J. Henderson |
| | |
| To Perkins Coie LLP: | Perkins Coie LLP |
| | 1120 N.W. Couch Street, Tenth Floor |
| | Portland, OR 97209 |
| | Attn.: Douglas Pahl |

Any notice or other communication hereunder shall be deemed given on the date of actual delivery thereof to the address of the addressee, if personally delivered, and on the date indicated in the return receipt or courier's records as the date of delivery or as the date of first attempted delivery to the address of the addressee, if sent by mail or courier service, such as Federal Express. Notice may also be given by telecopier or facsimile to any party having a telecopier or facsimile machine compatible with the telecopier or facsimile machine of the party sending the notice. Any notice given by telecopier or facsimile shall be deemed delivered when received by the telecopier or facsimile machine of the receiving party if received before 5:00 p.m. Pacific Time on the business day received, or if received after 5:00 p.m. Pacific Time, or if telecopied on a day other than a business day (i.e., a Saturday, Sunday, or legal holiday), then such notice shall be deemed delivered on the next following business day. The transmittal confirmation receipt

{00565469:2}

produced by the facsimile machine of the sending party shall be prima facie evidence of such receipt. Any party may change its address or telecopier or facsimile number for purposes of this Section 19 by giving notice to the other party. If a "*copy party*" is designated, service of notice shall not be deemed given to the designated party unless and until the copy party is also given such notice in accordance with this Subsection by giving notice to the other party. If a copy party is designated, service of notice shall not be deemed given to the designated party unless and until the copy party is also given such notice in accordance with this Subsection.

**SECTION 20.** **WAIVER OF STATUTE OF LIMITATIONS.** Grantor hereby waives the right to assert any statute of limitations as a bar to the enforcement of the lien of this Trust Deed or to any action brought to enforce the Note, the other Settlement Documents, or any other obligation secured by this Trust Deed.

**SECTION 21.** **RECONVEYANCE.** Upon payment of the Indebtedness secured by this Trust Deed, Beneficiaries shall request Trustee to reconvey the Property and shall surrender this Trust Deed and all notes evidencing Indebtedness secured by this Trust Deed to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to the Property. Such person or persons shall pay the Trustee's fee and other costs incurred in so reconveying the Property.

**SECTION 22.** **SUBSTITUTE TRUSTEE.** In accordance with applicable law, Beneficiaries may from time to time appoint a successor trustee to any Trustee appointed under this Trust Deed. Without conveyance of the Property, the successor trustee shall succeed to all the title, power, and duties conferred upon the Trustee in this Trust Deed and by applicable law.

**SECTION 23.** **ATTORNEYS' FEES.** In the event suit or action is instituted to enforce or interpret any of the terms of this Trust Deed, including, but not limited to, any action or participation by Grantor as a debtor in, or in connection with, a case or proceeding under the Bankruptcy Code or any successor statute, the prevailing party shall be entitled to recover all expenses reasonably incurred at, before and after trial and on appeal whether or not taxable as costs, including, without limitation, attorneys' fees, witness fees, expert and otherwise, deposition costs, copying charges, and other expenses. Whether or not any court action is involved, all reasonable expenses, including but not limited to, the costs of searching records, obtaining title reports or appraisals, surveyor reports, title insurance, trustee fees, and attorneys' fees, incurred by Beneficiaries that are necessary or advisable at any time in Beneficiaries' opinion for the protection of its interest or enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest from the date of expenditure until paid at the default interest rate provided in the Note or other Settlement Documents or if the Note or other Settlement Documents contain no default rate, then at the interest rates provided for in the Note.

**SECTION 24.** **GOVERNING LAW; SEVERABILITY.** This Trust Deed shall be governed by the laws of the State of Oregon. In the event that any provision or clause of this

Trust Deed or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Trust Deed or the Note that can be given effect without the conflicting provision, and to this end, the provisions of this Trust Deed and the Note are declared to be severable.

**SECTION 25.      CONSENTS OF BENEFICIARIES.**   In all events where the consent of Beneficiaries is required under the terms of this Agreement, Beneficiaries shall grant or refuse such consent within a reasonable period of time following the receipt of such request.   Any such consent may be granted or refused by Beneficiaries, without regard to any standard of good faith, fairness, or reasonableness.

**SECTION 26.      TIME OF ESSENCE.**   Time is of the essence in the payment and performance of the obligations under and secured by this Trust Deed and the other Settlement Documents.

**SECTION 27.      CHANGES IN WRITING.**   Any term of this Trust Deed and any addendum to the Trust Deed may only be changed, waived, discharged, or terminated by an instrument in writing signed by the party against which enforcement of the change, waiver, discharge or termination is sought.   Any agreement subsequently made by Grantor or Beneficiaries relating to this Trust Deed shall be superior to the rights of the holder of any intervening lien or encumbrance.

**SECTION 28.      ESTOPPEL CERTIFICATES.**   Grantor, within five (5) days of the request, shall furnish Trustee and Beneficiaries a written statement, duly acknowledged, of the amount of the Indebtedness secured by this Trust Deed and whether any offsets or defenses exist against such Indebtedness.   If Grantor shall fail to furnish such a statement within the time allowed, Beneficiaries shall be authorized, as Grantor's attorney-in-fact, to execute and deliver such statement.

**BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON TRANSFERRING FEE TITLE SHOULD INQUIRE ABOUT THE PERSON'S RIGHTS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007.  THIS INSTRUMENT DOES NOT ALLOW USE OF THE PROPERTY DESCRIBED IN THIS INSTRUMENT IN VIOLATION OF APPLICABLE LAND USE LAWS AND REGULATIONS.  BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY THAT THE UNIT OF LAND BEING TRANSFERRED IS A LAWFULLY ESTABLISHED LOT OR PARCEL, AS DEFINED IN ORS 92.010 OR 215.010, TO VERIFY THE APPROVED USES OF THE LOT**

{00565469:2}

EXHIBIT 2
Page 16 of 37
Case 19-31886-dwh11    Doc 149    Filed 04/14/23

**OR PARCEL, TO DETERMINE ANY LIMITS ON LAWSUITS AGAINST FARMING OR FOREST PRACTICES, AS DEFINED IN ORS 30.930, AND TO INQUIRE ABOUT THE RIGHTS OF NEIGHBORING PROPERTY OWNERS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007.**

**REQUEST FOR NOTICE OF DEFAULT AND
NOTICE OF SALE PURSUANT TO ORS 86.785**

Beneficiaries hereby request that Beneficiaries be provided with copies of any Notice of Default or Notice of Sale concerning the Property.

**WARNING**

**UNLESS YOU PROVIDE US WITH EVIDENCE OF THE INSURANCE COVERAGE AS REQUIRED BY OUR CONTRACT WE MAY PURCHASE INSURANCE AT YOUR EXPENSE TO PROTECT OUR INTEREST. THIS INSURANCE MAY, BUT NEED NOT, ALSO PROTECT YOUR INTEREST. IF THE PROPERTY BECOMES DAMAGED, THE COVERAGE WE PURCHASE MAY NOT PAY ANY CLAIM YOU MAKE OR ANY CLAIM MADE AGAINST YOU. YOU MAY LATER CANCEL THIS COVERAGE BY PROVIDING EVIDENCE THAT YOU HAVE OBTAINED PROPERTY COVERAGE ELSEWHERE.**

**YOU ARE RESPONSIBLE FOR THE COST OF ANY INSURANCE PURCHASED BY US. THE COST OF THIS INSURANCE MAY BE ADDED TO YOUR CONTRACT. IF THE COST IS ADDED TO YOUR CONTRACT, THE INTEREST RATE ON THE UNDERLYING CONTRACT WILL APPLY TO THIS ADDED AMOUNT. THE EFFECTIVE DATE OF COVERAGE MAY BE THE DATE YOUR PRIOR COVERAGE LAPSED OR THE DATE YOU FAILED TO PROVIDE PROOF OF COVERAGE.**

**THE COVERAGE WE PURCHASE MAY BE CONSIDERABLY MORE EXPENSIVE THAN INSURANCE YOU CAN OBTAIN ON YOUR OWN AND MAY NOT SATISFY ANY NEED FOR PROPERTY DAMAGE COVERAGE OR ANY MANDATORY LIABILITY INSURANCE REQUIREMENTS IMPOSED BY APPLICABLE LAW.**

*Signatures on Following Page*

{00565469:2}

IN WITNESS WHEREOF, Grantor has executed this Trust Deed the day and year first written above.

**GRANTOR:**

**Vahan IV NW Tenth LLC**

_____

**By:** Vahan M. Dinihanian, Jr.
**Its:** Member

STATE OF OREGON    )
                        ) ss.
County of _____   )

This instrument was acknowledged before me on this ___ day of _____, 202___, by Vahan M. Dinihanian, Jr., as Member of Vahan IV NW Tenth LLC, Grantor.

_____
Notary Public
My commission expires:_____

{00565469:2}

**REQUEST FOR RECONVEYANCE**

To Trustee:

      The undersigned is the holder of the Note secured by this Trust Deed. Said Note, together with all other Indebtedness secured by this Trust Deed, have been paid in full. You are hereby directed to cancel said Note and this Trust Deed, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Trust Deed to the person or persons legally entitled to that estate.

Date: _____

_____

By: _____

Title: _____

{00565469:2}

**EXHIBIT 2**
**Page 19 of 37**

Case 19-31886-dwh11     Doc 149     Filed 04/14/23

**EXHIBIT A**
**Legal Description**

{00565469:2}

# SECURED PROMISSORY NOTE

$600,000
January 19, 2023
Portland, Oregon

**FOR VALUE RECEIVED**, Vahan M. Dinihanian and 15005 NW Cornell LLC (each a "***Maker,***" and together, the "***Makers***"), promise to pay to Motschenbacher & Blattner LLP and Perkins Coie LLP (hereinafter, the "**Holders**"), or order, at the address designated in this Note or at such other location as Holders may designate, the sum of Six Hundred Thousand and No/100 Dollars ($600,000.00), in U.S. Currency (the "***Principal Balance***"), as set out in the Settlement Agreement dated January 19, 2023, (the "***Settlement Agreement***"), together with interest thereon at the rate provided below, on the following terms and conditions. This Note reflects the amount Holder agreed to pay to Holders pursuant to the Settlement Agreement.

Unless a default occurs, this note shall bear simple interest at the rate of four percent (4%) per annum, accruing from the date set forth above until this note is paid in full. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal is outstanding.

1. **PAYMENT.** The Note shall be paid as follows:

   **A.** Within thirty (30) days of the dismissal of the Bankruptcy Cases (as defined in the Settlement Agreement), Makers shall pay Holders the sum of Two Hundred Thousand and No/100 Dollars ($200,000);

   **B.** On or before February 28, 2023, Makers shall pay Holders the sum of One Hundred Thousand and No/100 Dollars ($100,000);

   **C.** This note shall mature, and outstanding principal, accrued interest, and other amounts shall be due and payable on or before the two-year anniversary of the dismissal of the Bankruptcy Cases (the "***Maturity Date***");

   **D.** All payments received shall be applied first to unpaid interest, and then to principal. It is anticipated that the payments received shall be interest only, until the Maturity Date; and

   **E.** Notwithstanding the foregoing, upon a Default by Makers that is not cured within the applicable Cure Period, if any, then in addition to any other rights or remedies that Holders may have, and without the giving of further notice, Holders may accelerate payment of all amounts owing on this Note, which shall be immediately due and payable.

2. **PREPAYMENT.** Makers may, at Makers' option, prepay the Outstanding Balance of the Note without penalty at any time during the term of the Note.

3. **DEFAULT INTEREST.** Upon a Default by Maker that is not cured within the applicable Cure Period, interest on this Note shall accrue at the rate of 8 percent per annum, until all amounts due hereunder are paid in full.

Page 1 of 5 – SECURED PROMISSORY NOTE
{00573710:1}

**4. DEFAULT.**

     **A.** Makers shall be in default under this Note of any of the following occurs ("***Default***"):

        **1.** Makers fail to pay the full amount of any payment of principal, interest, or other charges within ten days of the date such payment is due;

        **2.** Makers breach any other material terms of this Note, the Trust Deed or the Settlement Agreement; or

        **3.** Other than the Bankruptcy Cases described in the Settlement Agreement, either of the Makers or Vahan IV NW Tenth, LLC is/are the subject of a petition in bankruptcy, either voluntary or involuntary, or in any other proceeding under the federal bankruptcy laws or any state receivership laws.

     **B. Cure Period**. For non-payment Defaults, the term "Cure Period" means a period of five days beginning with delivery of a written notice of Default. No Cure Period shall exist for a payment Default.

     **C. Notice of Default; Cure.** Holders shall deliver written notice of any non-payment Default to Makers. Makers shall have the right to cure any non-payment Default within the Cure Period. If Makers fail to cure such Default within the Cure Period, then after expiration of the Cure Period, Holders may pursue any and all remedies in its absolute discretion.

**5. ADDITIONAL TERMS AND CONDITIONS.**

     **A.** The obligations of the undersigned shall be absolute and unconditional and shall remain in full force and effect until the entire principal, interest, penalties, premiums and late charges, if any, on the Note and all additional payments, if any, due pursuant to any other loan document (collectively "the obligations") shall have been paid and, until such payment has been made, shall not be discharged, affected, modified or impaired on the happening from time to time of any event, including, without limitation, any of the following, whether or not with notice to or the consent of any of the undersigned:

        **1.** the waiver, compromise, settlement, release, termination or amendment (including, without limitation, any extension or postponement of the time for payment or performance or renewal or refinancing) of any or all of the obligations or agreements of any of the undersigned under the Note;

        **2.** the failure to give notice to any or all of the undersigned of the occurrence of a default under the terms and provision of the Note;

        **3.** the release, substitution or exchange by the holder of the Note of any collateral securing any of the obligations (the "collateral") (whether with or without consideration) or the acceptance by the holder of the Note of any additional collateral or the availability or claimed availability of any other collateral or source of repayment or any non-perfection or other impairment of any collateral;

Page 2 of 5 – SECURED PROMISSORY NOTE

**4.** the release of any person primarily or secondarily liable for all or any part of the obligations, whether by bank or any other holder of the Note or in connection with any voluntary or involuntary liquidation, dissolution, receivership, insolvency, bankruptcy, assignment for the benefit of creditors or similar event or proceeding affecting any or all of the undersigned or any other person or entity who, or any of whose property, shall at the time in question be obligation, covenant or agreement contained in this Note; and

**5.** to the extent permitted by law, any other event, occurrence, action or circumstance that would, in the absence of this clause, result in the release or discharge of any or all of the undersigned from the performance or observance of any obligation, covenant or agreement contained in this Note.

**B.** The obligations of the undersigned to the Holders under the Note shall remain in full force and effect (or be reinstated) until the Holders have received payment in full of all obligations and the expiration of any applicable preference or similar period pursuant to any bankruptcy, insolvency, reorganization, moratorium or similar law, or at law or equity, without any claim having been made before the expiration of such period asserting an interest in all or any part of any payment(s) received by the Holders.

**C.** The undersigned expressly agree that the Holders shall not be required first to institute any suit or to exhaust its remedies against any of the undersigned or any other person or party to become liable hereunder or against any collateral, in order to enforce the Note; and expressly agree that, notwithstanding the occurrence of any of the foregoing, the undersigned shall be and remain, directly and primarily liable for all sums due under the Note. On disposition by the Holders of any property encumbered by any collateral, the undersigned shall be and shall remain jointly and severally liable for any deficiency.

## 6. MISCELLANEOUS PROVISIONS.

**A. Authority.** Except as described in the Settlement Agreement, the parties each represent and warrant that they have full power and actual authority to enter into the Note and to carry out all actions required of them by the Note. All persons executing the Note in representative capacities represent and warrant that they have full power and authority to bind their respective corporations, partnerships and/or marital communities.

**B. Notices.** All notices, requests, demands, and other communications required or permitted under this Agreement shall be in writing (which shall include notice by facsimile transmission) directed to the party at the address set forth below, or to such other address as that party may from time to time establish by giving notice as provided herein:

If to Makers, then to:

Vahan Dinihanian
15005 NW Cornell LLC
237 NW Skyline Blvd.
Portland, OR 97210

Page 3 of 5 – SECURED PROMISSORY NOTE
{00573710:1}

|  |  |
|---|---|
| If to Holders, then to: | Motschenbacher & Blattner LLP<br>117 SW Taylor Street, Suite 300<br>Portland, OR 97204<br>Attn.: Nicholas J. Henderson |
| and to: | Perkins Coie LLP<br>1120 N.W. Couch Street, Tenth Floor<br>Portland, OR 97209<br>Attn.: Douglas Pahl |

Any notice or communication hereunder shall be deemed to have been received by a party, if it is addressed to that party as provided herein with any postage or other delivery charges prepaid, (a) on the date delivered, if personally delivered, (b) on the date sent, if sent by electronic mail, (c) on the date sent, if sent by facsimile transmission on a regular business day in the State in which the addressee resides (a "Business Day") or, if not sent on a Business Day, on the next Business Day after the date sent, (d) on the next Business Day after dispatch, if sent by nationally recognized, overnight courier guaranteeing next Business Day delivery, and (e) on the third (3rd) Business Day after deposit into the United States mail.

**C. Governing Law.** The Note shall be interpreted and enforced according to the internal laws of the State of Oregon without giving effect to principals of conflicts of law.

**D. Consent to Jurisdiction and Venue.** All parties shall submit and not object to jurisdiction and venue in Multnomah County Circuit Court, State of Oregon, in connection with any claims arising out of the Note.

**E. Binding Effect.** The Note shall bind and inure to the benefit of the parties hereto and their respective heirs, legatees, representatives, receivers, trustees, successors, transferees and assigns.

**F. No Third-Party Beneficiaries.** The Note is for the benefit of the parties hereto only and is not intended to benefit any other person or entity, and no person or entity not a party to the Note shall have any third-party beneficiary or other rights whatsoever hereunder.

**G. Attorneys' Fees.** Should it be necessary for any party to the Note to initiate legal proceedings to adjudicate any issues arising hereunder, the party or parties to such legal proceedings who prevail shall be entitled to reimbursement of their attorneys' fees, costs, expenses and disbursements (including the fees and expenses of expert and fact witnesses) reasonably incurred or made by the substantially prevailing parties in preparing to bring suit, during suit, on appeal, on petition for review, and in enforcing any judgment or award, from the party or parties who do not prevail.

**H. Severability.** Any provision of the Note which is found to be invalid or in violation of any statute, rule, regulation or law shall be considered null and void, with the remaining provisions remaining viable and in effect.

**I. Headings Not Controlling.** The paragraph headings included herein are for reference only and are not a part of the Note. The headings shall not control or alter the meaning of the Note as set forth in the text.

**J. Construction.** Whenever the singular number issued in the Note and when required by the context, the same shall include the plural and vice versa, and the masculine gender shall include the feminine and neuter genders and vice versa.

**K. Waiver**. A waiver of any provision of the Note shall operate as a waiver only for the specific occasion as to which the waiver is given, and the provisions of the Note shall otherwise continue to be fully effective and operable as to any other occasion or occasions.

**L. Time of the Essence.** Time is of the essence with regard to the Note.

**M. Integration.** The Note constitutes the entire agreement of the parties on all subjects. The Note may not be modified, interpreted, amended, waived or revoked orally, but only in writing signed by all parties. The Note supersedes and replaces all prior agreements, discussions and representations on all subjects, all of which are merged into, and superseded by, this Note.

**N. No Reliance.** No party is entering into the Note in reliance on any oral or written promises, inducements, representations, understandings, interpretations or agreements, other than those contained in this Note (a) no promise or inducement for this Note has been made to you except as set forth herein, (b) this Note is executed by you freely and voluntarily, and without reliance on any statement or representation by the parties or any representatives or Members, any affiliates or any of parties' attorneys or agents except as set forth herein, (c) you have read and fully understand this Note and the meaning of its provisions, (d) you are legally competent to enter into this Note and to accept full responsibility therefore, and (e) you have been advised to consult with counsel before entering into this Note and have had an opportunity to do so.

**ORAL AGREEMENTS OR ORAL CONTRACTS TO LEND MONEY, EXTEND CREDIT OR FOREBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER OREGON STATE LAW.**

**MAKERS REPRESENT THEY HAVE HAD THE OPPORTUNITY TO HAVE INDEPENDENT COUNSEL OF THEIR CHOICE AND AT THEIR EXPENSE REVIEW THIS PROMISSORY NOTE AND ACCOMPANYING TRUST DEED /SECURITY AGREEMENT.**

**MAKERS:**

                                                  **15005 NW Cornell, LLC**

_____

Vahan M. Dinihanian, Jr.

                                       By: _____

                                       Name: Vahan M. Dinihanian, Jr.

                                       Title: Manager

# SETTLEMENT AGREEMENT

This Settlement Agreement ("***Agreement***") is made effective as of January 19, 2023 (the "***Effective Date***") by and between Motschenbacher & Blattner LLP, an Oregon limited liability partnership ("***M&B***") and Perkins Coie LLP, a Washington State limited liability partnership ("***Perkins***") (collectively, "***Counsel***"), on the one hand, and Vahan M. Dinihanian, Jr. ("***Dinihanian***") and 15005 NW Cornell LLC, an Oregon limited liability company ("***15005 LLC***") (collectively, the "***Debtors***"), on the other hand.  For purposes of this Agreement, M&B, Perkins, Dinihanian, and 15005 LLC shall each be referred to individually as a "***Party***" and collectively as the "***Parties***."

## RECITALS

A.      On May 21, 2019 (the "***Petition Date***"), each of the Debtors initiated a bankruptcy case in the United States Bankruptcy Court for the District of Oregon (the "***Bankruptcy Court***") by filing voluntary petitions under Chapter 11 of the Bankruptcy Code (the "***Code***").  15005 LLC's bankruptcy case was assigned Case No. 19-31883-dwh11 (the "***LLC Case***"), and Dinihanian's bankruptcy case was assigned Case No. 19-31886-dwh11 (the "***Individual Case***"). For purposes of this Agreement, each of the foregoing bankruptcy cases shall be collectively referred to as the "***Bankruptcy Cases***."

B.      On June 13, 2019, the Bankruptcy Court entered an order directing joint administration of the Bankruptcy Cases under Case No. 19-31883-dwh11.

C.      Since the Petition Date, Dinihanian has been represented by M&B and 15005 LLC has been represented by Perkins in the Bankruptcy Cases.

D.      During the Bankruptcy Cases, Counsel assisted the Debtors in prosecuting reorganization under Chapter 11, and also assisted the Debtors in prosecuting and defending multiple adversary proceedings.  Counsel also assisted the Debtors in obtaining approval for financing that the Debtor used to pay off a judgment creditor, preventing foreclosure of the Debtors' respective assets.

E.      The Debtors now desire to pursue a structured dismissal of the Bankruptcy Cases.  As part of that process, the amount and payment of fees owed to Counsel by the Debtors needs to be addressed. Counsel has provided itemized fee and cost statements to Debtors throughout the pendency of the Bankruptcy Cases, yet Debtors have expressed concern about their ability to pay the amount of the fees and costs incurred by Counsel.

F.      The Parties resolve Counsel's fee claims pursuant to a mediation that was completed December 6, 2022, to further the Debtors' desire to dismiss the Bankruptcy Cases.  The Parties reached a resolution of their disputes at the judicial settlement conference, on the terms, conditions, and obligations of this Agreement.

NOW THEREFORE, in consideration of the covenants and agreements contained herein, and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Parties agree as follows:

# AGREEMENT

**1.     Payment Amount and Terms**.  Subject to the contingencies described in this Agreement, Debtors agree to pay a total amount of six hundred thousand dollars ($600,000.00) ("***Total Payment***") to Counsel pursuant to the terms of the promissory note in substantially the form attached hereto as **Exhibit A** ("***Note***"), secured by a trust deed in the form attached hereto as **Exhibit B** (the "***Trust Deed***") granted by Vahan IV NW Tenth, LLC ("***VIVNWT***"), an affiliate of the Debtors, against the property located at 2150 NE 82nd Ave., Portland, OR (the "***82nd Property***").

**2.     Payment Terms**.  The Note shall indicate that the total payment shall be paid as follows:

> a.   The Debtors shall be jointly and severally liable for the entirety of the Total Payment;

> b.   The balance of the Note shall accrue interest at four percent (4%) per annum, beginning on the date that the Bankruptcy Cases are dismissed and so long as the Debtors' conduct does not unreasonably delay dismissal of the Bankruptcy Cases;

> c.   Within thirty (30) days of the Bankruptcy Cases being dismissed, the Debtors shall pay two hundred thousand dollars ($200,000.00) towards the balance of the Note ("***Dismissal Payment***");

> d.   On or before February 28, 2023, the Debtors shall pay one hundred thousand dollars ($100,000.00) towards the balance of the Note, regardless of the status of the Bankruptcy Cases or fulfillment of any other obligations under this Agreement ("***Absolute Payment***");

> e.   On or before the second annual anniversary of the date the Bankruptcy Cases are dismissed, all amounts owing under the Note, including without limitation costs, fees, and expenses associated with the Note, shall be due and payable by the Debtors to Counsel in full; and

> f.   There shall be no pre-payment penalty for all amounts due under the Note.

**3.     Security**.  All amounts owed under the Note shall be secured by the Trust Deed recorded against the 82nd Property.

**4.     Further Representation**.  Following execution of this Agreement and the related documents by Debtors and VIVNWT: (i) Counsel shall proceed with preparing and filing fee applications necessary to implement the terms of this Agreement; (ii) Counsel shall file and prosecute motions to dismiss the Bankruptcy Cases; (iii) Perkins shall assist in resolving any corporate resolutions required by Columbia Bank and Dinihanian's other business entities.

**5.     Additional Covenants; Contingencies**.

> a.   **Sale of 82nd Property**.  On or before January 31, 2023, Debtors shall: (i) cause Vahan IV NW Tenth LLC to list the 82nd Property for sale with Norris & Stevens or another licensed real estate broker; and (ii) instruct the foregoing broker to communicate with Nick Henderson of M&B or Doug Pahl of Perkins regarding the ongoing status of the listing, marketing, and sale efforts.

{00565251:4}

b.  **Bankruptcy Court Approval or Dismissal**.  The terms and conditions of this Agreement are not effective and shall not be binding on the Parties until the earlier to occur of either: (i) approval by the bankruptcy court pursuant to Fed. R. Bankr. P. 9019; or (ii) dismissal of the Bankruptcy Cases.

6.      **Effect of Full Performance by Debtors**.  Upon completion of all of Debtors' obligations under this Agreement, and provided that the Debtors have not otherwise defaulted under this Agreement, the Note, or the Trust Deed, Counsel shall release Debtors of any further liability for fees and costs incurred in the Bankruptcy Cases.

7.      **Incorporation of Recitals**.  The Parties incorporate herein by this reference the recitals listed above and affirm the truth of the same.

8.      **Headings and Captions**.  Headings and captions used in this Agreement are for ease of reference only, and do not constitute part of this Agreement, nor will they be used as an aid in the construction hereof.

9.      **Independent Examination**.  The Parties hereto warrant and represent that they have: (a) relied upon their own independent judgment, belief, and knowledge in entering into this Agreement; (b) obtained independent legal or tax advice they deem necessary in this matter, or have otherwise had the opportunity to do so; and (c) not been influenced to any extent whatsoever in entering into this Agreement by any representations or statements made by any other Party or person representing the Parties.

10.     **Notices**.  Any notice required or permitted to be given under this Agreement shall be given in writing and sent by an internationally recognized overnight delivery service, dated receipt requested. Notice shall be sent to the following addresses:

**If to M&B:**                          **If to Dinihanian:**

**Motschenbacher & Blattner LLP**       **Vahan M. Dinihanian**
117 SW Taylor Street, Suite 300         237 NW Skyline Blvd.
Portland, OR 97204                      Portland, OR 97210
**Attn.:** Nicholas J. Henderson

**If to Perkins:**                      **If to 15005 LLC:**

**Perkins Coie LLP**                    **15005 NW Cornell LLC**
1120 N.W. Couch Street, Tenth Floor     237 NW Skyline Blvd.
Portland, OR 97209                      Portland, OR 97210
**Attn.:** Douglas Pahl                 **Attn.:** Vahan M. Dinihanian, Jr.

11.     **Amendments**.  This Agreement shall only be amended by a written agreement executed by each Party.

**12.    Waiver**.  No relaxation, forbearance, delay, or indulgence by a Party in enforcing its or their rights under this Agreement or the granting of time by such Party shall prejudice or affect its or their rights under the Agreement.  No waiver of a breach or provision of this Agreement shall be deemed effective unless provided in writing by the allegedly waiving Party.  A waiver by a Party of a breach or provision shall not operate as a waiver of any other breach or provisions, or of any subsequent or continuing breach.

**13.    Time is of the Essence**.  Time is of the essence with respect to all obligations set forth in this Agreement.

**14.    Governing Law**.  This Agreement is entered into, and shall be construed and interpreted in accordance with, the laws of the State of Oregon and the United States Bankruptcy Code, where applicable.

**15.    Venue**.  Any action or proceeding arising out of this Agreement shall be litigated in courts located in Multnomah County, Oregon, including without limitation the United States Bankruptcy Court, District of Oregon, as applicable.  Each Party consents and submits to the jurisdiction of any local, state, or federal court located in Multnomah County, Oregon.

**16.    Severability**.  The paragraphs of this Agreement are severable.  Should any provision of this Agreement be declared or determined to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby and shall be enforceable to the fullest extent permitted by law.

**17.    Authority**.  The signatories to this Agreement represent and warrant that they have full power and authority to sign and deliver this Agreement on behalf of the Parties, subject only to approval by the Bankruptcy Court.

**18.    Signatures**.  This Agreement can be executed in duplicate originals, signature pages may be individually circulated and executed among the Parties, and facsimile signatures or scanned signatures will suffice and be deemed original signatures.  The documents described in this Agreement may be provided to whomever the Parties deem necessary to accomplish the intended goals set out herein.

**19.    Additional Documents**.  The Parties shall fully cooperate and execute any and all supplemental documents which are reasonably necessary and take all additional actions which are reasonably necessary and appropriate to give full force and effect to the basic terms and intent of this Agreement.

**20.    Entire Agreement**.  This Agreement contains the entire agreement between the Parties hereto.

**21.    Binding on Successors**.  This Agreement and the covenants and conditions contained herein shall apply to, be binding upon, and inure to the benefit of the respective heirs, administrators, executors, legal representatives, assignees, successors, and agents of the Parties.

22.     **Attorneys' Fees**.  Should any suit or action be filed to enforce the terms of this Agreement, or for the breach of the same, the losing party shall pay the prevailing party's attorneys' fees in an amount to be set by the court or forum in which such action is instituted, including without limitation any such fees incurred in any appeal.

We, the undersigned, hereby execute this Agreement as our free and voluntary act and deed as of the Effective Date set forth above.

**COUNSEL:**                                          **DEBTORS:**

**M&B:**                                              **Dinihanian:**

**Motschenbacher & Blattner LLP**


_____                               _____
**By:** Nicholas J. Henderson                         **Vahan M. Dinihanian, Jr.**, Individually
**Its:** Partner

**Perkins:**                                          **15005 LLC:**

**Perkins Coie LLP**                                  **15005 NW Cornell LLC**


_____                               _____
**By:** Douglas Pahl                                  **By:** Vahan M. Dinihanian, Jr.
**Its:** Partner                                      **Its:** Manager

# INTERCREDITOR AGREEMENT

This Intercreditor Agreement ("***Agreement***") is made effective as of January 19, 2023 (the "***Effective Date***"), by and between Motschenbacher & Blattner LLP, an Oregon limited liability partnership ("***M&B***") and Perkins Coie LLP, a Washington State limited liability partnership ("***Perkins***") (each individually a "***Creditor***," and collectively, "***Creditors***"), on the one hand, and Vahan M. Dinihanian, Jr. ("***Dinihanian***"), 15005 NW Cornell LLC, an Oregon limited liability company ("***15005 LLC***"), and Vahan IV NW Tenth LLC, an Oregon limited liability company ("***Vahan IV LLC***") (collectively, "***Debtors***"), on the other hand. For purposes of this Agreement, M&B, Perkins, Dinihanian, 15005 LLC, and Vahan IV LLC shall each be referred to individually as a "***Party***" and collectively as the "***Parties***."

## RECITALS

A. Dinihanian and 15005 LLC have executed and delivered to Creditors that certain: (i) Settlement Agreement dated January 19, 2023 ("***Settlement Agreement***"); and (b) Promissory Note in the principal amount of six hundred thousand dollars ($600,000.00) dated January 19, 2023 ("***Note***").

B. Vahan IV LLC has executed and delivered to Creditors that certain Trust Deed securing Debtors' obligations under the Note dated January 19, 2023 ("***Trust Deed***"). For purposes of this Agreement, the Settlement Agreement, Note, and Trust Deed shall be referred to collectively as the "***Settlement Documents***."

C. The Settlement Documents granted Creditors a security interest in Vahan IV LLC's real property located at 2150 NE 82nd Ave., Portland, OR 97220 (the "***Subject Property***"), and set forth the terms and conditions of Creditors' forbearance from exercising remedies against Dinihanian and 15005 LLC for amounts already owed by Dinihanian and 15005 LLC to Creditors pursuant to Dinihanian, 15005 LLC, and Creditors' pre-existing respective attorney-client relationships and related fee agreements.

D. The Parties hereto desire to enter into this Agreement providing other matters for the coordination of the amounts owed by Dinihanian and 15005 LLC to Creditors, and the security thereunder.

NOW THEREFORE, in consideration of the covenants and agreements contained herein, and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Parties agree as follows:

## AGREEMENT

1. **Creditors' Consent**. M&B and Perkins have each reviewed the Settlement Documents, this Agreement, and applicable consents to the transactions contemplated therein, including Creditors' right to have a security interest in the Subject Property *pari passu* with one another, pro

rata based on the amounts owed by Dinihanian and 15005 LLC, and upon the amounts agreed upon by M&B and Perkins. The security interests of M&B and Perkins in the Subject Property are collectively referred to herein as the "*Pari Passu Security Interests*."

**2.** **Creditors' Pro Rata Divisions**. Creditors shall divide the following amounts received by Dinihanian and 15005 LLC pursuant to the terms and conditions of the Settlement Agreement as follows:

**(a) Dismissal Payments**. Upon payment of the two hundred thousand dollar ($200,000.00) Dismissal Payment to Creditors under the Settlement Agreement: (i) sixty six thousand and No/100 dollars ($66,000.00) shall be paid to M&B; and (ii) one hundred thirty four thousand and No/100 dollars ($134,000.00) shall be paid to Perkins.

**(b) Absolute Payments**. Upon payment of the one hundred thousand dollars ($100,000.00) Absolute Payment to Creditors under the Settlement Agreement: (i) ten thousand dollars ($10,000.00) shall be paid to Vanden Bos & Chapman LLP; (ii) thirty thousand and No/100 dollars ($30,000) shall be paid to M&B; and (iii) sixty thousand and No/100 ($60,000.00) shall be paid to Perkins.

**(c) Note Balance**. For all other payments, including payment of the outstanding balance of the Note, including without limitation, accrued interest at four percent (4%) per annum, payments shall be made as follows: (i) .333 of the total amount of the payments shall be paid to M&B; and (ii) .667 of the payments shall be paid to Perkins.

**3.** **Effect of Default; Joint Exercise of Rights**. In the event of a default with respect to the obligations secured by any Pari Passu Security Interests, Creditors shall jointly share in the amount realized from the Subject Property in proportion to the amount of their respective debt with respect to which default has occurred to the total debt of both Creditors with respect to which defaults have occurred. Accordingly, Creditors shall jointly exercise their respective rights under the Pari Passu Security Interests, including without limitation selling and otherwise disposing the Subject Property thereunder. In connection therewith, before taking any action to enforce any of its rights or remedies under such Subject Property, such Creditor shall give the other Creditor notice of such action, together with information regarding the facts and circumstances which such action is grounded.

**4.** **Application of Priorities**. The priorities specified herein are applicable without regard to the: (a) time, manner, or order of attachment or perfection of any security interest; (b) time or order of filing of financing statements; or (c) giving or failure to give notice of acquisition or expected acquisition of purchase money or other security interest.

**5.** **Sole Benefit of Creditors**. This Agreement is solely for the benefit of the undersigned Creditors and no other persons or represented institutions shall have any rights, benefits, priority, or interest under or because of the existence of this Agreement.

6.    **Intercreditor Notice of Default**.  Each Creditor shall provide the other with a copy of any notice of the occurrence of an event of default simultaneously with the delivery of such notice to the Debtors, but the failure to do so shall not affect the validity of such notice or create a cause of action against either Creditor by the other for failing to give such notice.

7.    **Debtors' Consent**.  Debtors hereby consent to the Creditors sharing information with respect to the Subject Property, the Settlement Documents, and any related agreements or events between one another.

8.    **Incorporation of Recitals**.  The Parties incorporate herein by this reference the recitals listed above and affirm the truth of the same.

9.    **Headings and Captions**.  Headings and captions used in this Agreement are for ease of reference only, and do not constitute part of this Agreement, nor will they be used as an aid in the construction hereof.

10.   **Independent Examination**.  The Parties hereto warrant and represent that they have: (a) relied upon their own independent judgment, belief, and knowledge in entering into this Agreement; (b) obtained independent legal or tax advice they deem necessary in this matter, or have otherwise had the opportunity to do so; and (c) not been influenced to any extent whatsoever in entering into this Agreement by any representations or statements made by any other Party or person representing the Parties.

11.   **Notices**.  Any notice required or permitted to be given under this Agreement shall be given in writing and sent by an internationally recognized overnight delivery service, dated receipt requested.  Notice shall be sent to the following addresses:

| <u>If to M&B:</u> | <u>If to Dinihanian:</u> |
|---|---|
| **Motschenbacher & Blattner LLP** | **Vahan M. Dinihanian** |
| 117 SW Taylor Street, Suite 300 | 237 NW Skyline Blvd. |
| Portland, OR 97204 | Portland, OR 97210 |
| **Attn.:** Nicholas J. Henderson | |
| | |
| <u>If to Perkins:</u> | <u>If to 15005 LLC:</u> |
| **Perkins Coie LLP** | **15005 NW Cornell LLC** |
| 1120 N.W. Couch Street, Tenth Floor | 237 NW Skyline Blvd. |
| Portland, OR 97209 | Portland, OR 97210 |
| **Attn.:** Douglas Pahl | **Attn.:** Vahan M. Dinihanian, Jr. |

**If to Vahan IV LLC:**

**Vahan IV NW Tenth LLC**
237 NW Skyline Blvd.
Portland, OR 97210
**Attn.:** Vahan M. Dinihanian, Jr.

**12.     Amendments**.  This Agreement shall only be amended by a written agreement executed by each Party.

**13.     Waiver**.  No relaxation, forbearance, delay, or indulgence by a Party in enforcing its or their rights under this Agreement or the granting of time by such Party shall prejudice or affect its or their rights under the Agreement.  No waiver of a breach or provision of this Agreement shall be deemed effective unless provided in writing by the allegedly waiving Party.  A waiver by a Party of a breach or provision shall not operate as a waiver of any other breach or provisions, or of any subsequent or continuing breach.

**14.     Time is of the Essence**.  Time is of the essence with respect to all obligations set forth in this Agreement.

**15.     Governing Law**.  This Agreement is entered into, and shall be construed and interpreted in accordance with, the laws of the State of Oregon and the United States Bankruptcy Code, where applicable.

**16.     Venue**.  Any action or proceeding arising out of this Agreement shall be litigated in courts located in Multnomah County, Oregon, including without limitation the United States Bankruptcy Court, District of Oregon, as applicable.  Each Party consents and submits to the jurisdiction of any local, state, or federal court located in Multnomah County, Oregon.

**17.     Severability**.  The paragraphs of this Agreement are severable.  Should any provision of this Agreement be declared or determined to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby and shall be enforceable to the fullest extent permitted by law.

**18.     Authority**.  The signatories to this Agreement represent and warrant that they have full power and authority to sign and deliver this Agreement on behalf of the Parties.

**19.     Signatures**.  This Agreement can be executed in duplicate originals, signature pages may be individually circulated and executed among the Parties, and facsimile signatures or scanned signatures will suffice and be deemed original signatures.  The documents described in this Agreement may be provided to whomever the Parties deem necessary to accomplish the intended goals set out herein.

**20.     Additional Documents**.    The Parties shall fully cooperate and execute any and all supplemental documents which are reasonably necessary and take all additional actions which are reasonably necessary and appropriate to give full force and effect to the basic terms and intent of this Agreement.

**21.     Entire Agreement**.    This Agreement contains the entire agreement between the Parties hereto.

**22.     Binding on Successors**.    This Agreement and the covenants and conditions contained herein shall apply to, be binding upon, and inure to the benefit of the respective heirs, administrators, executors, legal representatives, assignees, successors, and agents of the Parties.

**23.     Attorneys' Fees**.    Should any suit or action be filed to enforce the terms of this Agreement, or for the breach of the same, the losing party shall pay the prevailing party's attorneys' fees in an amount to be set by the court or forum in which such action is instituted, including without limitation any such fees incurred in any appeal.

*Signature Page to Follow*

We, the undersigned, hereby execute this Agreement as our free and voluntary act and deed as of the Effective Date set forth above.

**CREDITORS**:                                    **DEBTORS**:

**M&B**:                                          **Dinihanian**:

MOTSCHENBACHER & BLATTNER LLP

_____                           _____
**By:** Nicholas J. Henderson                     **Vahan M. Dinihanian, Jr**., Individually
**Its:** Partner

**Perkins**:                                      **15005 LLC**:

PERKINS COIE LLP                                  15005 NW CORNELL LLC

_____                           _____
**By:** Douglas Pahl                              **By:** Vahan M. Dinihanian, Jr.
**Its:** Partner                                  **Its:** Manager

                                                  **Vahan IV LLC**:

                                                  VAHAN IV NW TENTH LLC

                                                  _____
                                                  **By:** Vahan M. Dinihanian, Jr.
                                                  **Its:** Member

**CONSENT OF MEMBER**

**OF**

**VAHAN IV NW TENTH LLC**

This Consent of Member ("***Consent***") sets forth actions taken as of January 19, 2023, by the written consent of Vahan M .Dinihanian, Jr., as the sole member (the "***Member***") of Vahan IV NW Tenth LLC, an Oregon limited liability company (the "***Company***").

**RESOLUTIONS**

RESOLVED, that the Company enter into and perform the following agreements, each with any changes that any party to the agreements deem necessary or appropriate: (a) that certain trust deed by and between the Company, as Grantor, First American Title Company of Oregon, as Trustee, Motschenbacher & Blattner LLP, an Oregon limited liability partnership ("***M&B***"), as a Beneficiary, and Perkins Coie LLP, a Washington State limited liability partnership ("***Perkins***"), as a Beneficiary, dated January 19, 2023, in the form presented to the Member ("***Trust Deed***"); (b) that certain intercreditor agreement by and between M&B and Perkins, on the one hand, and Member, 15005 NW Cornell LLC, an Oregon limited liability company, and the Company, on the other hand, dated January 19, 2023, in the form presented to the Member ("***Intercreditor Agreement***"); and (c) any other agreements contemplated by the Trust Deed and Intercreditor Agreement.

RESOLVED, that Member is authorized to sign and deliver on behalf of the Company the Trust Deed, Intercreditor Agreement, and any agreements contemplated by either.

RESOLVED, that the Member is authorized to sign and deliver all documents and to take or cause to be taken all other acts on behalf of the Company that the Member deems necessary or appropriate to effect and carry out the intent of the above resolutions.

RESOLVED, that all acts previously taken by Member on behalf of the Company to effect and carry out the intent of the above resolutions are approved, ratified, and confirmed, provided the acts were not inconsistent with the Company's articles of incorporation or then-current operating agreement, the Oregon Limited Liability Company Act, or any other applicable law.

The signing of this Consent constitutes written waiver of any notice required by the Company's articles of incorporation or current operating agreement, or otherwise.

The Member hereby executes this Consent as his free and voluntary act and deed as of the date set forth in the preamble.

**MEMBER**:

_____
**Vahan M. Dinihanian, Jr**., Member